**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL ALLEN GRAHAM, | ) | CASE NO. 1:23-cv-00574-JDA |
| Plaintiff, | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| v. | ) | JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF SOCIAL | ) | **ORDER** |
| SECURITY, | ) | |
| Defendant, | ) | |

## I.      INTRODUCTION

Plaintiff Daniel Allen Graham ("Mr. Graham") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). (ECF No. 1). This matter is before me pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1. For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## II.      PROCEDURAL HISTORY

On July 12, 2020, Mr. Graham filed an application for DIB, alleging a disability onset date of March 1, 2020. (Tr. 188-89.)[1] Mr. Graham previously filed a disability application, but that application was dismissed in June 2018. (Tr. 84.) Mr. Graham's application relates to gout, degenerative disc disease of the cervical spine, hypertension, obesity, anxiety, and PTSD. (*See* Tr. 116, 122.) His application was denied initially and upon reconsideration. (Tr. 113-17, 119-22.) Mr.

---

[1] The administrative transcript ("Tr.") appears at ECF No. 4 on CM/ECF.

Graham requested a hearing before an administrative law judge ("ALJ"). (Tr. 124-25.) Due to the COVID-19 pandemic, an ALJ held a telephone hearing on December 17, 2021. (Tr. 37-83.) Mr. Graham, represented by counsel, and a vocational expert ("VE") testified at the hearing. (*Id.*) The ALJ issued a written decision on January 20, 2022, finding Mr. Graham was not disabled under the meaning of the Social Security Act. (Tr. 20-32.) The ALJ's decision became final on January 20, 2023, when the Appeal Council declined further review. (Tr. 1.)

On March 19, 2023, Mr. Graham filed his Complaint, challenging the Commissioner's final decision. (ECF No. 1.) Mr. Graham asserts the following assignments of error:

(1) The ALJ erred at Step Three of the Sequential Evaluation when he failed to comply with the relevant Social Security Rulings 17-2p and 19-2p, and find that the combination of Plaintiff's obesity, degenerative disc disease, and gout equaled a Listing.

(2) The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence, and limiting effects of Plaintiff's symptoms, including pain, precluded him from engaging in substantial gainful activity on a full-time and sustained basis.

(3) The ALJ committed harmful error at Step Four of the Sequential Evaluation when he erroneously found that Plaintiff could perform the past relevant work.

(ECF No. 6, PageID#406.)

### III.   BACKGROUND INFORMATION

#### A.   <u>Personal, Education, and Vocational Experience</u>

Mr. Graham was born in 1965, and he was 55 years old on the alleged disability onset date. (Tr. 31.) He completed two years of college. (*Id.*) He lives with his girlfriend. (Tr. 45.) His past relevant work was employment as a special police officer, driving instructor, first responder, and police officer. (Tr. 30.)

### B.  Relevant Statements and Hearing Testimony

#### 1.  Mr. Graham's Function Reports

In August 2020, Mr. Graham completed an Adult Function Report. He stated he could not sit, stand, walk, or lift his right arm at chest level due to nerve damage. (Tr. 221.) He also stated that he had PTSD, which caused difficulty sleeping and excessive daytime somnolence. (*Id.*) He reported that he has difficulty bending to put on socks and pants. (Tr. 222.) He reported that he is able to drive and travels to places by car. (Tr. 224.) He stated that he can pay attention for a "long" time. (Tr. 225.)

In November 2021, Ms. Wendy Surgoine, Mr. Graham's girlfriend, completed an Adult Third Party Function report for Mr. Graham. Ms. Surgoine reported that Mr. Graham can no longer stand for over 10 minutes without pain. (Tr. 267.) She also reported that Mr. Graham cannot bend to put his socks on and has difficulty standing in the shower. (Tr. 268.) She further reported that Mr. Graham is able to drive and ride in a car. (Tr. 270.) She stated that Mr. Graham has severe pain in his back and joints and numbness in his right leg. (Tr. 272.) She did not report that Mr. Graham had any issues with concentration. (*See id.*) She reported that Mr. Graham uses a cane when a gout attack happens. (Tr. 273.)

#### 2.  Mr. Graham's Hearing Testimony

Mr. Graham was 56 years old at the time of the hearing. (Tr. 45.) He testified that he worked about 10 hours weekly at a driving school. (Tr. 45-46.) He reported that he helped his friend who worked at the driving school by performing job duties that include advertising, talking to parents, writing policies, making calls, and doing some in-car driving with student drivers for no longer than an hour at a time. (Tr. 47-48.)

Mr. Graham testified that he is unable to work due to recurrent, chronic grout that makes it painful to walk. (Tr. 60.) His gout attacks typically last between a week to 10 days. (*Id.*) He reported "having a cane." (*Id.*) He also reported that his gout caused permanent joint damage and deformity in his feet. (*Id.*) He testified that his gout spread in the previous year to his elbows, knees, thumb, and wrist. (Tr. 60-61.) When he began having gout attacks, he would go to the doctor or the emergency room. (Tr. 62-63.) He takes medication for gout, but he stated that the only medication that offers some relief is Trazadone. (Tr. 63.) He testified, however, that he still experiences pain and swelling. (*Id.*)

Mr. Graham stated that he is also unable to work due to compression in his lower back that makes his right thigh numb. (Tr. 61.) He testified that he can only stand for about 30 minutes before needing to sit. (*Id.*) He further testified that his doctor told him that he would probably have permanent numbness. (Tr. 63.) He also stated he had compression in his neck that aggravates his arm. (Tr. 61.) He stated that medications do not help improve these conditions. (*Id.*) Mr. Graham testified that his PTSD makes it difficult for him to sleep due to nightmares and sweat. (*Id.*) He stated that he was not treating with anyone beyond his primary care physician for his PTSD. (Tr. 64.)

Mr. Graham discussed his daily activities. He does laundry sometimes. (Tr. 61.) He reported that he loves doing household chores and is "very obsessive with cleaning." (Tr. 62.) He stated, however, that he has been unable to vacuum for the last 8 to 12 months prior to the hearing because he experiences radiating pain that turns into numbness down his leg. (*See* Tr. 62.) He also added that he is unable to bear weight on either side of his body if he has a gout attack in his feet or knees. (*See id.*)

Mr. Graham alleged that he is unable to perform certain aspects of his job as a driving instructor. (Tr. 65.) Specifically, Mr. Graham stated that he cannot sit in a car for prolonged periods due to his back conditions. (*Id.*) He also alleged that he cannot use the secondary brake for a vehicle when he has a gout attack. (*Id.*)

### 3. *Vocational Expert's Hearing Testimony*

The VE testified that Mr. Graham performed the following past relevant work: driving instructor, special police officer, first responder, and police officer. (Tr. 30.) The ALJ first asked the VE whether a hypothetical individual with Mr. Graham's age, education, and vocational experience could perform work at the light exertional level if additionally limited to frequently climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; frequently balancing, stooping, kneeling, crouching, and crawling; and never working at unprotected heights and near moving mechanical parts. (Tr. 72.) The VE testified that this individual would be able to perform Mr. Graham's past relevant work as a driving instructor and special police officer as it is generally classified in the *Dictionary of Occupational Titles* ("DOT"), but not his other positions. (*See* Tr. 72-73.) The ALJ then asked the VE if any other occupations existed that require skills acquired in Mr. Graham's past relevant work, but no additional skills. (Tr. 73.) The VE stated that the individual, with his transferable skills, could perform work as a desk police officer, security guard, and radio dispatcher (Tr. 73-74.)

The ALJ next asked the VE whether the same individual from the first hypothetical could perform work if further limited to only occasional use of foot controls with the right foot. (Tr. 75.) The VE stated that her testimony would remain the same for this hypothetical. (Tr. 75-76.)

Mr. Graham's counsel asked whether the individual could perform past relevant work if limited to occasionally interacting with the public. (Tr. 80.) The VE opined that this would not

prevent the individual from performing past relevant work. (*Id.*) Mr. Graham's counsel then asked if this limitation would impact the transferability of skills. (*Id.*) The VE opined that this would have an effect because the ability to communicate and interface socially is "paramount" to the individual's past relevant work. (*Id.*)

Mr. Graham's counsel then asked the VE if the individual could perform work if he would be off task due to pain symptoms 20% of the time on 50% of the workdays. (Tr. 80.) The VE opined that it would be work preclusive if an individual was off task over 10% of the time. (Tr. 81.) Mr. Graham's counsel also asked whether it would be work-preclusive if the individual was absent three days per month. (*Id.*) The VE opined that this would be work-preclusive. (*Id.*) Finally, Mr. Graham's counsel asked whether the individual could perform work if he required a cane for ambulation and balance. (*Id.*) The VE opined that a cane would not affect the individual's ability to perform work as a dispatcher, but it would affect his ability to perform work as a security guard or desk police officer. (*Id.*) The VE also opined that the individual would not be able to perform past relevant work. (*Id.*)

### C. Relevant Non-Medical/Medical Opinion Evidence

#### 1. State Agency Opinions

##### a. Physical Consultants

In October 2021, Gerald Klyop, M.D., a state agency reviewing physician, reviewed Mr. Graham's record at the initial level of consideration. (Tr. 95-96.) Dr. Klop opined that Mr. Graham could perform work at the light exertional level. (Tr. 95-96.) Specifically, Dr. Klyop found that Mr. Graham was limited to lifting, carrying, and pulling 20 pounds occasionally and 10 pounds frequently, and further limited Mr. Graham to standing/walking for no more than six hours and siting for six hours out of an eight-hour workday. (Tr. 95.) Dr. Klyop also limited Mr. Graham to

frequently climbing ramp and stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders, ropes, or scaffolds. (*Id.*) Dr. Klyop found that Mr. Graham had no manipulative limitations but should avoid all exposure to hazards. (Tr. 96.) Finally, Dr. Klyop found that Mr. Graham did not meet or medically equal Listing 14.09 and or any other listing. (Tr. 293.) In June 2021, Lynne Torello, M.D., affirmed Dr. Klyop's findings. (Tr. 102, 104-06.)

### b. Psychological Consultants

In March 2021, Cindy Matyi, Ph.D., found that Mr. Graham had no more than mild limitations in any area of mental functioning, had no severe mental impairments, and had no limitations due to his mental health. (Tr. 92-93.) Aracelis Rivera, Psy.D., affirmed Dr. Matyi's findings. (Tr. 101-02.)

### 2. Charles Misja, Ph.D.

In March 2021, Mr. Graham underwent a one-time consultative examination with Dr. Misja. (Tr. 344-48.) Mr. Graham walked with a normal gait and did not use an assistive device. (Tr. 345.) He reported no psychiatric hospitalizations and denied problems with anger and irritability. (*Id.*) He reported a diagnosis of PTSD and said he had nightmares. (*Id.*) Mr. Graham drove himself to the appointment, dressed appropriately, was friendly and cooperative, and made good eye contact. (Tr. 346.) He had normal speech and was easy to understand. (*Id.*) He reported anxiety in crowds, small areas, and jails. (*Id.*) He also reported difficulty falling asleep and staying asleep, in part due to nightmares. (Tr. 347.) There was no evidence of hallucinations, delusions, grandiosity, or aggression. (*Id.*) There was no evidence of any thought disturbance. (*Id.*) Mr. Graham was given three words to remember and remembered all of them after five minutes. (Tr. 247.) He also successfully performed serial sevens (counting down from 100 by sevens). (*Id.*) Mr. Graham's intelligence was in the average range, and he had good insight and judgment. (Tr. 347.)

Dr. Misja identified Mr. Graham as an "excellent candidate for a rehabilitative effort." (*Id.*) Dr. Misja opined that the longitudinal effects of Mr. Graham's mental impairments have imposed minimal deficits in his ability to engage in the four broad areas of mental functioning. (Tr. 348.)

### D. Relevant Medical Evidence

On January 7, 20217, Mr. Graham underwent a consultative examination with Dr. Freeland Ackley. Dr. Ackley observed that Mr. Graham exhibited a positive straight leg raising test results on the right side of his lumbar spine. (Tr. 292.) Mr. Graham, however, also had full range of motion in his lumbar spine, was able to ambulate with a normal unassisted gait, and could perform lower extremity functional capacity tests. (*Id.*)

On December 17, 2019, Mr. Graham met with Dr. Katherine Ayers. (Tr. 311-315.) He reported he had gout affecting his left knee. (Tr. 311.) He had begun taking Allopurinol, a preventative medication, in October 2019. (Tr. 320.)

On February 15, 2020, Mr. Graham saw a physician's assistant and complained of sinus congestion. (Tr. 352.) The treatment notes indicate that Mr. Graham has a history of gout affecting his left knee. (Tr. 353.) On examination, Mr. Graham was alert, oriented, and cooperative, displayed appropriate mood and affect, and was in no acute distress. (Tr. 355.) He had a normal gait and denied any numbness, tingling, or weakness. (Tr. 352, 355.)

On September 2, 2020, Mr. Graham complained of neck pain at a medical appointment. (Tr. 378.) He reported he stopped power lifting over the previous year due to pain. (*Id.*) He denied any depression or anxiety. (*Id.*) Examination revealed normal mood and affect, normal gait, full range of motion in his arms, and tenderness to the right shoulder and neck area, but no neurological deficits. (Tr. 380.)

On January 13, 2021, Mr. Graham attended an appointment with a nurse practitioner. (Tr. 367.) The nurse practitioner noted that Mr. Graham was seen a few months earlier for pain radiating from his neck down through his arms, but that the Flexeril he was prescribed at that time helped and "almost resolved [his] symptoms." (*Id.*) The nurse practitioner recommended a repeat x-ray and a referral for physical therapy to assess the nature and severity of his cervical spine with reported radiculopathy in his arms and fingers, but Mr. Graham declined. (*Id.*) On examination, Mr. Graham was alert and oriented, exhibited normal mood and effect, and was in no acute distress. (Tr. 370-71.) He displayed normal gait and no neurological deficits. (*Id.*)

On February 10, 2021, Mr. Graham attended a follow-up appointment regarding his blood pressure. (Tr. 363.) On examination, he had edema in his lower extremity. (*Id.*) At a February 15, 2021, appointment, Mr. Graham's examination revealed Mr. Graham had normal gait and normal mood and affect. (Tr. 355.) He was alert and oriented times three and in no acute distress. (*Id.*)

On March 5, 2021, Mr. Graham underwent a one-time consultative examination by Dr. Misja. (Tr. 344-48.) The summary of this examination is located in the "Non-Medical/Medical Opinion Evidence" of this Memorandum Opinion and Order. At this examination, Mr. Graham was observed walking with a normal gait and without an assistive device. (Tr. 345.) After examination, Dr. Misja concluded that the longitudinal effects of Mr. Graham's mental impairments have imposed minimal deficits on his ability to engage in the four broad areas of mental functioning. (Tr. 348.)

On March 10, 2021, Mr. Graham complained of right finger numbness in his right finger, but no pain or discomfort. (Tr. 357.) He was found to have paresthesia in his right hand. (*Id.*)

On June 16, 2021, Mr. Graham had a follow-up appointment regarding his blood pressure. (Tr. 382.) He denied any "issues or concerns" at the appointment. (*Id.*) The physical examination

9

revealed Mr. Graham was alert and in no acute distress, had normal gait, had normal mood and affect, and was oriented to person, place, and time. (Tr. 385.)

## IV.     THE ALJ'S DECISION

The ALJ first determined that Mr. Graham met the insured status requirements of the Social Security Act through September 30, 2025. (Tr. 22.) The ALJ then determined Mr. Graham has not engaged in substantial gainful activity since March 1, 2020, the alleged disability onset date. (*Id.*) The ALJ found that Mr. Graham had the following severe impairments: gout; degenerative disc disease of cervical spine; hypertension; and obesity. (Tr. 22-23.) However, the ALJ found that none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Mr. Graham could perform work at the light exertional level, except that he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for 6 hours out of an 8-hour workday; climb ramps and stairs frequently; never climb ladders, ropes, or scaffolds; balance, stoop, kneel, crouch, and crawl frequently; and never work at unprotected heights or near moving mechanical parts. (Tr. 27-30.) The ALJ further determined that Mr. Graham is capable of performing past relevant work as a special police officer and a driving instructor as generally performed and classified in the DOT. (Tr. 30-31.) The ALJ found that these occupations do not require the performance of work-related activities precluded by Mr. Graham's RFC. (*Id.*) The ALJ also determined that Mr. Graham has acquired transferable work skills from his past relevant work and could perform work as a desk police officer and security guard. (Tr. 31-32.) Accordingly, the ALJ concluded that Mr. Graham was not disabled within the meaning of the Social Security Act since his application date through the date of the ALJ's decision. (Tr. 32.)

## V.    LAW AND ANALYSIS

### A.    <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the

11

SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

**B.** **Standard for Disability**

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

### C. **Analysis**

#### 1. *The ALJ Properly Determined that Mr. Graham Did Not Medically Equal Listings 14.09, 1.15, and 1.18.*

Mr. Graham first argues that the ALJ erred by not finding that his "recurrent gout attacks" medically equaled Listing 14.09 (inflammatory arthritis). (ECF No. 6, PageID#414.) He next argues that the ALJ committed reversible error by not considering his obesity in combination with his other impairments of degenerative disc disease and gout, which led to the ALJ's failure to find Mr. Graham met or medically equaled Listings 1.15 and 1.18. (*Id.* at PageID#414-415.)

In response, the Commissioner argues that Mr. Graham's Listing 14.09 argument lacks merit because the ALJ explicitly considered Mr. Graham's chronic pain from inflammatory arthritis as part of his Listing 14.09 analysis; Mr. Graham failed to present medical evidence demonstrating equivalency; and no medical source found Mr. Graham medically equaled Listing 14.09. (ECF No. 8, PageID#434-35.) The Commissioner also contends that Mr. Graham's obesity argument has "simply no support…in the record." (*Id.* at PageID#436.) Specifically, the Commissioner asserts that the ALJ thoroughly discussed Mr. Graham's obesity and determined that his obesity, along with his other impairments, did not satisfy the severity or medical equivalency standard of Listings 1.15, 1.18, and/or 14.09. (*Id.* (citing Tr. 26.)) The Commissioner also notes that no medical source found Mr. Graham met or medically equaled Listings 1.15 or 1.18, and that Mr. Graham "makes no attempt to carry his burden showing otherwise." (*Id.*) The Commissioner's arguments are well-taken for the following reasons.

#### a. **Mr. Graham Does Not Meet His Burden in Demonstrating That His Impairment Medically Equals Listing 14.09.**

At Step Three, a claimant has the burden to show that he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. §

404.1520(a)(4)(iii). If the claimant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers v. Comm'r of SSA*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (noting that, without such analysis, it is impossible for a reviewing court to determine whether substantial evidence supported the decision).

The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *See Sheeks v. Comm'r of SSA*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing." *Id*. at 641; *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any Step Three evaluation of the claimant's physical impairments, when the ALJ found that the claimant had the severe impairment of back pain).

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at 641-42)). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id*. (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366

14

(6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a listing's criteria).

Mr. Graham's Listing 14.09 argument fails for two reasons. First, Mr. Graham states that the "ALJ failed to consider whether [his] gout was medically equal" to Listing 14.09. (ECF No. 6, PageID#414.) Yet, a plain reading of the ALJ's decision reveals the ALJ explicitly considered Mr. Graham's gout in his Listing 14.09 analysis. Specifically, the ALJ noted that "[Mr. Graham] has experienced chronic pain from inflammatory arthritis (i.e., gout)" as part of his analysis regarding whether Mr. Graham met or medically equaled Listing 14.09. (Tr. 25.)

Second, Mr. Graham fails to explain how his impairment is medically equal to Listing 14.09. (*See* ECF No. 6, PageID#414.) Specifically, Mr. Graham, represented by counsel, fails to identify *which* part of Listing 14.09, *i.e.,* parts A, B, C, or D, he allegedly satisfies or *how* his cited evidence establishes *every requirement* of the Listing. (*Id.*)[2] As stated above, it is the claimant's burden at Step Three to prove that an impairment medically equals a listing. *See Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). To meet that burden, a claimant must "present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or *present medical evidence which describes how the impairment has such equivalency*." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) (emphasis added).

Merely citing to diagnoses of gout and experienced related pain does not satisfy this burden. (ECF No. 6, PageID#414 (citing Tr. 303, 311, 320, 323, 353, 358, 364, 368, 379, 383.))

---

[2] Arguably, Mr. Graham's cursory Listing 14.09 argument should be waived. *See McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citations omitted); *Cheuvront v. Comm'r of Soc. Sec.*, No. 5:19-cv-00360, 2019 WL 7049106, at *15 (N.D. Ohio Dec. 23, 2019) (noting that plaintiff "arguably forfeited" argument that he met or medically equaled a listing by "articulating *some* criteria for the listings, but omitting specific references to record evidence that would support a finding that he met *all* the criteria") (emphasis in original). For the sake of completeness, however, the Court will consider the argument.

A diagnosis alone says nothing about the severity of an impairment. *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of…impairments…does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time."); *Higgs. v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Asbury v. Comm'r of Soc. Sec.*, No. 14-CV-13339, 2016 WL 739658, at *3 (E.D. Mich. Feb. 25, 2016) ("[D]iagnoses themselves generally do not establish disability; rather, disability is determined by the functional impairments caused by the diagnosis or condition.... And a diagnosis of a condition, without more, does not speak to the severity of the condition or the functional limitations associated with it."). Accordingly, the Court finds that this argument lacks merit.

> **b.  The ALJ Appropriately Evaluated the Impact of Obesity on Mr. Graham's Related Impairments in Analyzing Whether His Impairments Medically Equaled Listings 1.15 and 1.18.**

Mr. Graham's remaining argument—that the ALJ committed reversible error by not considering his obesity in combination with his other impairments, which led to the ALJ's failure to find Plaintiff met or medically equaled Listings 1.15 and 1.18—lacks merit for similar reasons. The ALJ here, over the course of four paragraphs, discussed what the regulations require him to do when assessing the combined effects of obesity with regard to his impairments. The ALJ specifically noted that he found that Mr. Graham's BMI ranged between 35 and 35.9, but the ALJ determined that Mr. Graham did not satisfy "the requisite severity or *medical equivalency* standard of Listings 1.15, 1.18, and/or 14.09 *with consideration to the guidance on obesity* in the Listings." (Tr. 26 (emphasis added)). And Mr. Graham does not present any medical opinions corroborating obesity-related limitations to satisfy his burden. *See Hollinger v. Comm'r of Soc. Sec.*, No. 1:23-CV-00418-BYP, 2024 WL 310715, at *9 (N.D. Ohio Jan. 11, 2024) (finding plaintiff did not satisfy burden where no medical opinion or state agency opinion corroborated plaintiff's claims of

obesity-related limitations), *report and recommendation adopted*, 2024 WL 310092 (N.D. Ohio Jan. 26, 2024); *Farrell v. Comm'r of Soc. Sec.*, No. 1:22-CV-02020-SL, 2023 WL 6882788, at *9 (N.D. Ohio Oct. 3, 2023) (same), *report and recommendation adopted*, 2023 WL 6879848 (N.D. Ohio Oct. 18, 2023).

Finally, Mr. Graham offers no clear explanation or argument as to *how* his obesity would have made the combination of his impairments medically equal Listings 1.15 and 1.18. Specifically, Mr. Graham appears to merely conclude, without pointing to any record evidence, that his obesity would have greater impact on his degenerative disc disease and gout. (*See* ECF No.6, PageID#415.) What further frustrates Mr. Graham's argument is his failure to even reference the specific criteria of the Listings that he would meet. (*See id.*) Thus, even if the ALJ had erred in his obesity analysis, the ALJ's failure would be, at worst, harmless error because Mr. Graham does not demonstrate the record raises a substantial question as to whether he met a Listing. *See Cheuvront v. Comm'r of Soc. Sec.*, No. 5:19-CV-00360, 2019 WL 7049106, at *17 (N.D. Ohio Dec. 23, 2019). Accordingly, the Court finds that this sub-claim lacks merit.

### 2. Substantial Evidence Supports the ALJ's SSR 16-3p Subjective Symptom Evaluation.

Mr. Graham contends that the ALJ improperly applied the SSR 16-3p criteria when he failed to find that the intensity, persistence, and limiting effects of Mr. Graham's symptoms precluded him from engaging in substantial gainful activity on a full-time and sustained basis. (ECF No. 6, PageID#416.) Additionally, he argues that the ALJ failed to account for his pain related to gout flares and disabling pain that would interfere with his ability to sustain work activity. (*Id.* at PageID#417-18.) Thus, Mr. Graham contends that it is "clear" that he satisfied the SSR 16-3p criteria, and that the ALJ failed to articulate "any supportable rationale" that Mr.

Graham's statements were not entirely consistent with the medical evidence. (*Id.* at PageID#419 (citing Tr. 27.)) The Commissioner disagrees. (ECF No. 9, PageID#436-40.)

Evaluating an individual's subjective symptoms is a two-step process. SSR 16-3p, 2017 WL 5180304, at *3. First, the ALJ must consider whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* The ALJ must then evaluate the intensity and persistence of the individual's symptoms and determine the extent to which they limit the individual's ability to perform work-related activities. *Id.* At the second step, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources (such as family and friends). *Id.*

An ALJ must consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including the daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ must also determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.*

An ALJ is not required to accept a claimant's subjective complaints, *Jones v. Comm'r of Soc. Sec.*, 336 F. 3d 469, 476 (6th Cir. 2003), and need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). But the regulations require the ALJ to evaluate a claimant's symptoms, and the explanation must be "sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248; *see also* SSR 16-3p, 2017 WL 5180304, at *10.

The ALJ does not need to use any "magic words," so long as it clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617-JDG, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021). The ALJ's evaluation of subjective evidence receives great deference from a reviewing court. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). Absent compelling reason, a court may not disturb the ALJ's analysis of the claimant's subjective complaints, and the conclusions drawn from it. *Id*. (internal quotations and citations omitted).

Here, a review of the ALJ's decision reveals that the ALJ considered the entire record, based his findings on multiple relevant factors, and provided "specific reasons for the weight given to the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. For example, the ALJ discussed the location, duration, frequency, and intensity of Mr. Graham's symptoms. Notably, contrary to Mr. Graham's assertion, the ALJ discussed Mr. Graham's statements that he cannot work because of his "chronic" gout and musculoskeletal impairments throughout the decision. (Tr. 22, 25, 27.)

The ALJ, however, also discussed examination findings that demonstrated inconsistencies with those statements. *See* 20 C.F.R. § 404.1529(c)(2); SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms…"). Although the discussion was not specifically repeated in the SSR 16-3p analysis, the Court reads the ALJ's decision as a whole and with common sense. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (observing that the ALJ's rationale need not come in "tidy packaging" and that courts must "read the decision as

19

a whole and with common sense"). Specifically, the ALJ discussed examination findings where Mr. Graham demonstrated a normal gait, did not walk with an assistive device, denied numbness, tingling, and weakness, exhibited full range of motion in his arms, and exhibited no neurological deficits. (Tr. 25, 28-29; *see* Tr. 345, 352, 355, 370-71, 380, 385.) Thus, Mr. Graham's argument that the ALJ did not consider how his pain affected his ability to walk is refuted by a reading of the ALJ's decision.

Next, the ALJ also considered Mr. Graham's statements that his PTSD and anxiety prevented him from working. (Tr. 22-23.) But the ALJ also noted that Mr. Graham did not see a mental health professional at all during the relevant period. (Tr. 22.) An ALJ may reasonably consider a claimant's lack of mental health treatment in setting forth a RFC determination where, as here, there is no evidence connecting the claimant's lack of treatment to the mental health disorder itself. *Greene v. Comm'r of Soc. Sec.*, No. 18-1507, 2019 WL 4579223, at *9 (N.D. Ohio July 3, 2019).

Notably, Mr. Graham's sole mental health evaluation in the record was unremarkable. (Tr. 29.) The ALJ also discussed that the state agency psychologists, as well as Dr. Misja, found that Mr. Graham had no severe mental impairments and no mental limitations. (Tr. 29; *see* Tr. 92-93, 102, 104-06, 348.) To the extent that Mr. Graham alleges that the ALJ failed to consider how his pain interfered with his ability to maintain attention (*see* ECF No. 6, PageID#418), Mr. Graham's own statements to Dr. Misja directly contradict this allegation. Indeed, Mr. Graham reported to Dr. Misja that he had *no* problems with attention and concentration. (Tr. 348.) Notably, there were no problems with attention noted during the examination. (*Id.*)

The ALJ also considered the effectiveness of Mr. Graham's medication and treatment that Mr. Graham received for relief of his pain and related symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)

(ALJ may consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his] pain or other symptoms."). For example, the ALJ observed that, in January 2021, Mr. Graham used Flexeril for radiating pain from his neck down through his arms and the medication "helped and almost resolved [his] symptoms." (Tr. 25; *see* Tr. 367.)

The ALJ also discussed that Mr. Graham refused a referral for physical therapy. (Tr. 25; *see* Tr. 367.) A claimant's noncompliance with physical therapy is an appropriate factor that the ALJ may rely upon to evaluate a claimant's subjective statements. *See Simpson v. Comm'r of Soc. Sec.*, No. 1:14-cv-801, 2016 WL 74420, at *11 (S.D. Ohio Jan. 6, 2016) (holding that because "[t]he record does not show that plaintiff followed through on her treating orthopedist's suggestions despite her complaints of disabling pain" the ALJ was reasonable in discounting the claimant's complaints). The ALJ even considered Mr. Graham's testimony regarding cane usage but determined that there is no evidence in the record that substantiated Mr. Graham was ever prescribed a cane or other assistive device (Tr. 28.) The ALJ also noted that Mr. Graham's mental health was stable with Lexapro/Citalopram, and he did not seek out any additional mental health services. (Tr. 22-23.)

Finally, the ALJ considered Mr. Graham's activities of daily living and how they contradicted his allegations regarding his mental conditions. *See* 20 C.F.R. § 404.1529(c)(3)(1); *see also Temples v. Comm'r of Soc. Sec.,* 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible). Specifically, the ALJ noted that Mr. Graham worked part-time at a driving school where he helped with advertising, talking to parents,

writing policies, making calls, and some in-car driving with student drivers. (Tr. 28; *see* Tr. 47-48).

In sum, the ALJ considered the conflicting evidence in the record and Mr. Graham's testimony. Here, the ALJ provided sufficient, clear reasons demonstrating why the intensity, persistence, and limiting effects of Mr. Graham's subjective symptoms were not as severe as alleged. Instead of directly confronting the ALJ's reasoning, Mr. Graham presents testimony and some pieces of evidence that he believes supports an alternative interpretation and concludes that the ALJ "failed to articulate any supportable rationale." (ECF No. 6, PageID#419.) But "[p]ointing to evidence demonstrating another feasible interpretation does not establish the ALJ's decision is not supported by substantial evidence." *See Dornan v. Comm'r of Soc. Sec.*, No. 1:22-CV-02244-JRA, 2023 WL 8789168, at *11 (N.D. Ohio Dec. 4, 2023), *report and recommendation adopted*, 2023 WL 8780713 (Dec. 19, 2023). Indeed, "[e]ven if this Court were to find that evidence could support an alternative conclusion, [the Court] must affirm if the credibility determination is supported by substantial evidence." *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 533 (6th Cir. 2014). The Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

By discussing the location, frequency, and duration of Mr. Graham's symptoms, normal or unremarkable objective findings, noncompliance with treatment, lack of treatment for mental health conditions, the effectiveness of treatment, and activities of daily living, the ALJ built an "accurate and logical bridge" between the evidence of record and the result. *Fleischer*, 774 F.Supp.2d at 877. Thus, Mr. Graham does not establish a "compelling reason" for this reviewing

court to disturb the ALJ's credibility determination. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Accordingly, the Court finds that this argument lacks merit.

### 3. The ALJ Reasonably Found that Mr. Graham Could Perform His Past Relevant Work.

Finally, Mr. Graham alleges that "the ALJ committed harmful error at [S]tep [F]our of the sequential evaluation process when he erroneously found that Plaintiff could perform his past relevant work." (ECF No. 6, PageID#421.) He asserts that he cannot perform his past relevant work because his "problems with his right lower extremity and his recurring gout … did not support a finding that he could perform work at the light level of exertion." (*Id.*) Specifically, Mr. Graham argues that the ALJ failed to consider his need for an assistive device in his RFC determination. (*Id.* at PageID#421-22.) He also argues that the ALJ failed to consider his anxiety and PTSD at later steps in the sequential evaluation process when forming the RFC determination. (*Id.* at PageID#421.) Thus, he argues that the ALJ failed to consider the totality of his impairments, rendering the ALJ's reliance on the VE testimony that Mr. Graham had transferable work skills to other occupations not supported by substantial evidence. (*Id.* at PageID#422-23.) These arguments are not well-taken.

First, the Court notes that Mr. Graham conflates arguments involving distinct steps of the sequential evaluation process in this assignment of error.[3] Mr. Graham asserts that the ALJ erred at Step Four because Mr. Graham allegedly cannot perform his past relevant work. (*Id.*) Thus, Mr. Graham argues that his "problems with his right lower extremity and his recurring gout … did not

---

[3] Courts in the Northern District of Ohio have previously cautioned Mr. Graham's counsel to refrain from combining disparate challenges and arguments regarding the sequential disability evaluation process together in a single assignment of error. *See, e.g., Dellarco v. Comm'r of Soc. Sec. Admin.*, No. 4:22-CV-00962-PAB, 2023 WL 3324833, at *9 n.6 (N.D. Ohio Apr. 20, 2023) (Armstrong, M.J.), *report and recommendation adopted sub nom. Dellarco v. Comm'r of Soc. Sec.*, 2023 WL 3320142 (N.D. Ohio May 8, 2023); *Overstreet v. Comm'r of Soc. Sec.*, No. 1:21-cv-2062, 2022 WL 15524729, at *11 n.9 (N.D. Ohio Oct. 11, 2022) (Grimes, M.J.), *report and recommendation adopted*, 2022 WL 15522981 (N.D. Ohio Oct. 27, 2022); *Klapp v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-02850-JDG, 2022 WL 310228, at *15 n.5 (N.D. Ohio Feb. 2, 2022) (Greenberg, M.J.).

support a finding that he could perform work at the light level of exertion." (*Id.*) But this argument is a Step Three argument, *not* a Step Four argument. As the ALJ noted, "*before* considering [S]tep [F]our … I must first determine the claimant's residual functional capacity." (Tr. 21 (citing 20 C.F.R. § 404.1520(e) (emphasis added))).

Next, I agree with the Commissioner that Mr. Graham,  "merely rehashes arguments" (ECF No. 9, PageID#440) already raised in his previous assignments of error. Specifically, Mr. Graham argues that the ALJ "found a cane would be necessary for balance during a gout attack, but the ALJ failed to include the need for an assistive device in his RFC." (ECF No. 6, PageID#422.) This assertion misstates the ALJ's decision. In fact, the ALJ pointed out that *Mr. Graham* "testified he used a cane to accommodate his recent" gout flare up. (Tr. 28.) The ALJ then found that "longitudinal evidence in the record fail[ed] to establish a continuous period of diminished ambulation that would reduce the claimant's residual functional capacity to sedentary exertional work activities since his alleged onset date." (*Id.*). The ALJ pointed to the objective musculoskeletal and neurological findings, Mr. Graham's own reported ameliorative effects from Flexeril, and Mr. Graham's failure to undergo physical therapy as support for the reduced range of light work in the RFC determination. (*Id.*)

Further, Mr. Graham fails to meet his burden in demonstrating that his cane is medically necessary. SSR 96-9p states that in order "[t]o find that a hand-held assistive device is medically required, there must be documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." 1996 WL 374185, at *7. Here, Mr. Graham fails to point to any medical evidence supporting a need for a cane beyond his own testimony. (*See* ECF No. 6, PageID#417 (citing Tr.

273); 421-22.) A claimant's testimony "does not qualify as 'medical documentation establishing the need for a cane under SSR 96-9p.'" *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *18 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom. Golden v. Comm'r of Soc. Sec.*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019); *Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (finding that testimony of the claimant and claimant's mother that the claimant used a cane or walker at "virtually all times" did not qualify as medical documentation establishing the need for a cane under SSR 96-9p); *see also White v. Saul*, No. 1:20-cv-236, 2021 WL 1145463, at *8 (N.D. Ohio Mar. 25, 2021) ("Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailing when the record lacked supporting medical documentations demonstrating the requirement for such a device."). Thus, Mr. Graham fails to establish the ALJ committed reversible error—or any error—for failing to include the need for a cane in Mr. Graham's RFC.

Mr. Graham's remaining argument, *i.e.,* that the ALJ failed to consider Mr. Graham's anxiety at PTSD at later steps in the sequential evaluation process, lacks merit. Indeed, the ALJ's decision again suggests the opposite conclusion. As discussed in detail above, the ALJ considered Mr. Graham's mental health impairments throughout the decision. (*See* Tr. 22-23, 25-26, 28-29). While discussing these mental health impairments, the ALJ noted that Mr. Graham did not see a mental health professional at any point during the relevant period, exhibited unremarkable results at his evaluation with Dr. Misja, and had normal mental health findings by his primary care providers, and every medical source in the record opined that he had no mental limitations. (Tr. 22-23, 28-29; *see* Tr. 345-47, 355, 370-71, 378, 380.)

Mr. Graham's argument constitutes an improper invitation to engage in de novo review of his claim. It is not a reviewing court's role to "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011). Accordingly, the Court finds Mr. Graham's arguments that the ALJ erred in finding he could perform light work lack merit.

## VI.    RECOMMENDATION

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision DENYING Mr. Graham's application for DIB.

Dated: February 13, 2024                      *s/ Jennifer Dowdell Armstrong*
                                               Jennifer Dowdell Armstrong
                                               U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).